AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Aaron Haynes Morris | ) Case No. 3-21-mj-71332 MAG |
| | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___1/1/2018 through 5/31/2020___ in the county of ___San Francisco and elsewhere___ in the

___Northern___ District of ___California___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |
| | |
| | Maximum Penalties: |
| | • Imprisonment: 20 years |
| | • Fine: $250,000 |
| | • Supervised Release: 3 years |
| | • Special Assessment: $100 |
| | • Forfeiture |

This criminal complaint is based on these facts:

See attached affidavit of FBI Special Agent Alexandra Bryant

☑ Continued on the attached sheet.

Approved as to form: */s/ Leif Dautch*
Assistant U.S. Attorney

___s/___
*Complainant's signature*

Alexandra Bryant, FBI Special Agent
*Printed name and title*

Sworn to before me by telephone.

Date: ___08/24/2021___

*Judge's signature*

City and state: ___San Francisco, California___      Hon. Joseph C. Spero, Chief U.S. Magistrate Judge
*Printed name and title*

Print    Save As...    Attach    Reset

## <u>AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR CRIMINAL COMPLAINT AND ARREST WARRANT</u>

I, Alexandra Bryant**,** a Special Agent with the Federal Bureau of Investigation in San Francisco, California, being first duly sworn, hereby depose and state as follows:

## <u>INTRODUCTION AND AGENT BACKGROUND</u>

1.      I make this affidavit in support of a one-count Criminal Complaint against AARON HAYNES MORRIS (hereinafter MORRIS), alleging that he committed Wire Fraud, in violation of 18 U.S.C. § 1343, for defrauding a Bay Area company by using another person's social security number and multiple fraudulent pretenses to gain employment.  For the reasons set forth below, there is probable cause to believe that MORRIS has committed the foregoing violation of federal law.

2.      I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed for approximately four years.  I am currently assigned to a Complex Financial Crime Squad of FBI's San Francisco Field Division.  As part of my assigned duties, I investigate potential violations of federal criminal law, specifically involving white-collar crime.

3.      The statements contained in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other law enforcement officials and witnesses.  This affidavit summarizes such information in order to show that there is probable cause to believe that MORRIS has committed the violation listed above.  This affidavit does not purport to set forth all of my knowledge about this matter, or to name all of the persons who participated in this crime.

**APPLICABLE LAW**

4.      Title 18, United States Code, Section 1343 provides: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."

**FACTS SUPPORTING PROBABLE CAUSE**

**A.  Overview of MORRIS's Scheme**

5.      AARON MORRIS ("MORRIS") is a 37-year-old male believed to be residing in Los Gatos, California.  There is probable cause to believe that since January 1, 2018, MORRIS has defrauded at least six companies in the San Francisco area, including a staffing agency that placed MORRIS in multiple temporary positions, including at a non-profit organization.  My investigation has revealed that MORRIS provided false information to get hired at all six companies, and he was simultaneously employed at times at multiple companies without his employers knowing.  MORRIS utilized his brother's social security number and date of birth so that these companies' background checks would not discover that MORRIS was convicted of fraud in Florida in 2015 for embezzling more than $350,000 from his then-employer.  MORRIS is also suspected of accessing and distributing confidential client information from at least one of the Bay Area companies.  MORRIS continued this scheme through at least May 2020, when he was placed temporarily for two weeks at a non-profit organization.

2

6.    The below chart summarizes the approximate dates of employment at all six companies, the role MORRIS held at each company, and MORRIS's starting gross salary. The remainder of this affidavit will go into detail about MORRIS's employment at Company R and Company CC.

| Company | Industry of Company | Dates of Employment | Position Held | Starting Gross Salary |
|---|---|---|---|---|
| Company S | Software Company Headquartered in San Francisco | 12/2016 to 02/2018 | Compensation Manager | $150,000 |
| Company C | Online Course Provider Headquartered in Mountain View | 03/2018 to 03/2019 | Senior Compensation & People Analytics Manager | $165,000 |
| Company A | Cancer Treatment Technology Firm Headquartered in Sunnyvale | 01/2019 to 04/2019 | Director, Compensation & Benefits | $210,000 |
| Company R | Ecommerce and Online Retailer with offices in San Mateo | 06/2019 to 10/2019 | Senior Associate in Compensation | $130,000 |
| Company CC | Consulting HR Firm Headquartered in San Francisco | 09/2019 to 10/2019 | Principal Compensation Consultant | $190,000 |
| Company RH | Staffing Firm Headquartered in Menlo Park | 11/2019 to at least May 2020 | Multiple Temporary Roles | Hourly |

## B. MORRIS Fabricates His Resume and Assumes His Brother's Identity to get Hired at Company R

7.    In June 2019, MORRIS was hired by Company R in its Global Rewards group, which handles compensation and benefits for Company R employees.  He had an employment start date of June 6, 2019 at the company's office in San Mateo, CA.  As part of his application to Company R, MORRIS provided a resume.  The resume MORRIS provided to Company R stated that he had a JD (law degree), MBA (business degree), and BA (bachelor's degree) from Columbia University, was presently employed by McKinsey & Company, and had worked at Salesforce from 2016 to 2018.

8.    Company R used a third-party background check company, Victig, to check MORRIS's criminal history, education, and prior employment.  Company R has its prospective employees provide their personal information directly to Victig, which is located in Bluffdale, Utah.  Once Victig completes their background check of a prospective employee, they provide

Company R with a summary report of their findings.  In this case, Victig provided their report on

MORRIS to Company R's office in Midvale, Utah.

9.      When MORRIS was being considered for employment by Company R, Victig

sent an email to MORRIS with a link to Victig's application where MORRIS could enter

information about himself.  MORRIS provided Victig with the name ALEX HAYNES

MORRIS, a social security number ending in 0146, and a date of birth in February 1986 for his

background check.  As part of processing the background check, multiple Victig employees

stationed in Utah reviewed the information provided by MORRIS and researched his education,

employment history, and any criminal history connected to the date of birth and social security

number he provided.  I believe that when MORRIS, who resided in California, provided

information to Victig, which is located in Utah, this constituted an interstate wire.

10.     Based on an FBI interview of deputy counsel for Company R, the group at

Company R that reviewed MORRIS's background report from Victig was separate from the

group at Company R that on-boarded MORRIS, which included the review of MORRIS's I-9

form.  On his I-9 form, MORRIS listed a date of birth in September 1983 and a social security

number ending in 7983.  This date of birth and social security number was different from the one

he had provided Victig for his background check, but the two groups at Company R did not

compare the information in the Victig report to MORRIS's I-9 form.

11.     Based on database and criminal history records, MORRIS has an actual birth date

in September 1983, and a social security number ending in 7983.  This is the information he

listed on his I-9, not on his background check application.  MORRIS has a 2105 felony

conviction from Dade County in Florida for a fraud-and-swindle scheme to obtain property of

4

$50,000 or more, which resulted in a 10-year probation sentence and 30 days confinement. MORRIS was also charged at that time by the Dade County State Attorney's Office with one count of Embezzlement – Theft of Trade Secrets (state offense code 812.081.2), but that charge was dropped as part of the plea agreement.

12.     The FBI interviewed the Chief Legal Officer of the healthcare company MORRIS embezzled from in Florida. MORRIS embezzled approximately $350,000 from his employer in Miami, FL while he was employed as a benefits specialist.  MORRIS had access to the employees' health insurance information and was in charge of depositing health insurance checks.  MORRIS created a fake company, which was almost identical in name to his employer, and opened a bank account for the fake company.  MORRIS then siphoned off and deposited some of the health insurance checks into the bank account he opened.

13.     I believe that MORRIS used a different date of birth and social security number for his background check so that his prospective employers would not discover he had a felony conviction for defrauding a previous employer.

14.     Based on database and Illinois DMV information, MORRIS has a brother, ALEXANDER H MORRIS with a date of birth in February 1986, and a social security number ending in 0146.  Based on my training and experience, I believe MORRIS gave his brother's February date of birth and his brother's social security number to Victig to pass the background check, given his prior criminal history.

15.     MORRIS also provided Victig with contact information for supervisors at his past employers, so that Victig could collect references from them.  For MORRIS's employment at McKinsey from March 2018 to present, MORRIS listed a J.M. as his supervisor.  Victig received

5

a voicemail from J.M. confirming MORRIS had worked at McKinsey and Company.  Company R's Deputy General Counsel obtained this voicemail from Victig after MORRIS was terminated from Company R.  After listening to the voicemail, Company R's Deputy General Counsel believes the voice on the recording was actually MORRIS's voice.

16.     Victig and Company R had difficulty confirming MORRIS's educational background.  When Columbia would not confirm his attendance, MORRIS told Company R's human resources department that he had an outstanding library fine at Columbia University, which is why the University would not confirm his attendance.  Shortly after this, Victig received an email from a supposed CLAUDIA FONG, Senior Associate Director of Operations at Columbia Business School, email address clf-2116@columbia-gsb.org, confirming MORRIS had attended Columbia.  Based on a public domain search, the domain "columbia-gsb.org" was created on June 4, 2019, the same day the email was sent.  Based on my training and experience, I believe this to be a spoofed Columbia University email address created by MORRIS.

17.     Records obtained from Columbia University as part of this investigation indicate that MORRIS was never enrolled at the university.

18.     MORRIS was salaried at $130,000 per annum at Company R.  He was paid via direct deposit biweekly from June 2019 until his termination from Company R in October 2019.  His paycheck was direct deposited into a JPMorgan Chase checking account ending in 9683 that MORRIS opened under the name of Echelon Group Investments LLC.  MORRIS is the sole signer on this business account and the listed address is 535 Mission Street, Fl 14, San Francisco, CA 94105.

**C. MORRIS Had Simultaneously Been Working for Company CC, to whom He Had also Lied and Presented a False Identity**

19.     On October 4, 2019, an employee at Company R received a call from Company CC inquiring about MORRIS.  Company CC stated MORRIS had been working for them and had just been terminated.  According to Company R employees, Company R had no prior knowledge that MORRIS was also employed at Company CC.  Upon discovering this fact, Company R immediately removed his access to all Company R systems.  MORRIS was terminated from Company R on October 9, 2019.

20.     While still employed at Company R, MORRIS had been hired by Company CC as a Senior Compensation Analyst earning $190,000 per annum and had an employment start date of September 9, 2019.  Company CC used a recruitment firm to find MORRIS.  The resume MORRIS provided the recruitment firm was similar to the resume provided to Company R.  On that resume, MORRIS stated that he was currently employed at McKinsey & Company, had previously been employed at Salesforce, and had his JD/MBA from Columbia University.

21.     MORRIS sent an email to the recruitment firm on July 12, 2019, listing two references and their phone numbers.  MORRIS listed S.T. as his McKinsey reference and J.S. as his Salesforce reference.  As part of his application process with the recruitment firm that ultimately led to his job at Company CC, and in listing his references, MORRIS stated in the email to the recruitment firm the following: "See below for my references.  I haven't been able to chat with [S.T.] (McKinsey direct manager) as he's working from our Japan office this week.  I should be able to reach him this evening due to the time difference.  But you call call [*sic*] my

7

old Salesforce manager anytime today.  Also have a couple clients references I'm waiting to hear

back from.  I'll let you know ASAP."

22.     There is probable cause to believe this statement was false and that MORRIS did

not work at McKinsey in 2018 or 2019.  Based on financial records obtained from JPMorgan

Chase for multiple accounts held by MORRIS, MORRIS received direct payroll deposits from

the following potential employers in 2018 and 2019: Companies S, C, A, R, CC and RH.  There

is no indication in the bank accounts that MORRIS received direct deposits from McKinsey &

Company.  Additionally, I know from Company R that MORRIS was working at Company R

when he sent his resume to the recruiting firm.  The resume that MORRIS sent stated he had

worked at McKinsey & Company since March 2018 to present.  Finally, the name S.T. is

different from the name of the supervisor MORRIS listed in his background check for Company

R.  As mentioned above, MORRIS listed J.M. as his McKinsey & Company supervisor to Victig

and Company R.

23.     According to FINRA (Financial Industry Regulatory Authority) records and open

source records, S.T. is the CEO of CSuite Investment, which he started in January 2019, and is

located in San Francisco.  Prior to that, S.T. was at Wells Fargo for four years as an investment

advisor and, based on my experience, was most likely not simultaneously employed at McKinsey

and Company in 2018 and 2019.

24.     Based on the likely false representations MORRIS made to the recruitment firm

regarding his employment history, references, and education, the recruitment firm recommended

MORRIS to Company CC.  MORRIS was interviewed by multiple people at Company CC

8

before he was offered a position.  Neither the recruitment firm nor Company CC ran a

background check on MORRIS.

25.     MORRIS was fired via videoconference from Company CC on October 3, 2019,

due to tardiness and poor work performance.  After the termination, Company CC called a

contact at Company R, because MORRIS claimed during his job interview that Company R had

been one of his clients when he worked at McKinsey.  Company R told Company CC that

MORRIS was, in fact, employed at Company R.

**D.  MORRIS Has Continued to Seek and Gain Employment Under False Pretenses**

26.     Based on financial records obtained from JPMorgan Chase for multiple accounts

held by MORRIS, MORRIS received from December 2017 to January 2020 approximately

$250,558 from his employment at Companies S, C, A, R, CC and RH.

27.     Based on information from the Employment Development Department, it appears

that an "AARON MORRIS" with a social security number ending in 0146 (MORRIS's brother's

social security number) was employed at two additional California companies in 2020 and 2021.

Based on my training and experience, I believe this means MORRIS may be continuing his

scheme of gaining employment using another person's social security number and multiple

fraudulent pretenses.

<u>**CONCLUSION**</u>

28.     Based on the information described above, there is probable cause to believe that,

beginning on a date unknown but no later than in or around January 2018 and continuing through

in or around May 2020, MORRIS did knowingly and intentionally commit wire fraud; that is,

MORRIS devised and intended to devise a scheme and artifice to defraud Company R, as to a

material matter and to obtain money and property; to wit a six-figure salary by means of materially false and fraudulent pretenses, representations, and promises and by omission and concealment of material facts, including concealing his prior felony conviction for embezzlement and falsely representing that MORRIS had graduate degrees from Columbia University.  For the purposes of executing such scheme and artifice, MORRIS did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, including a June 4, 2019 email to the background check company Victig, all in violation of 18 U.S.C. § 1343 (Wire Fraud).  Accordingly, I respectfully request that a warrant be issued for MORRIS's arrest.

## REQUEST FOR SEALING

29.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in connection with the criminal complaint, including this affidavit.  I believe that sealing these documents is necessary because they discuss an ongoing criminal investigation that is neither public nor known to the target of the investigation.  Based upon my training and experience, I know that criminals actively search for criminal affidavits and search warrants via the Internet.  Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

　/s/ *Alexandra Bryant*
ALEXANDRA BRYANT
Special Agent
Federal Bureau of Investigation

10

Sworn to before me over the telephone and signed by me pursuant
to Fed.R.Crim.P 4.1 and 4(d) on this 24th  day of August____ 2021

_____
HON. JOSEPH C. SPERO
CHIEF UNITED STATES MAGISTRATE JUDGE

11